595 A.2d 152

Anthony STURKIE, Guardian and Parent for
Toni Lynn Sturkie, a Minor, Appellant,

v.

ERIE INSURANCE GROUP and State Farm Mutual
Automobile Insurance Company, Appellees.

Anthony STURKIE, Guardian and Parent
for Toni Lynn Sturkie, a Minor

v.

ERIE INSURANCE GROUP and State Farm
Mutual Automobile Insurance Company

Appeal of: STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Superior Court of Pennsylvania.

Argued May 23, 1991.

Filed July 25, 1991.

William D. Garvin, McKeesport, for appellant (at 1456) and for appellee (at 1457).

Richard Boyle, Jr., Greensburg, for appellant (at 1457). Leonard R. Reeves, Latrobe, for Erie Ins., appellee (at 1456 & 1457).

John W. Pollins, III, Greensburg, amicus curiae.

Before TAMILIA, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeals again bring before our court an issue of whether one may recover damages for personal injuries under both the liability and underinsured motorists coverages of the same motor vehicle insurance policy. The injuries giving rise to the claims in dispute in these appeals occurred in a February 13, 1987 automobile accident in McKeesport, Pennsylvania. On that date, an automobile operated by Eric Lucky, a minor, collided with other vehicles, and the accident caused serious injuries to Toni Lynn Sturkie, a guest passenger in Eric Lucky's car. Eric Lucky's automobile was then covered by a motor vehicle insurance policy issued by defendant Erie Insurance Group ("Erie"). At the time of the accident, Ms. Sturkie's father maintained several separate policies of motor vehicle insurance issued by defendant State Farm Mutual Automobile Insurance Company ("State Farm"). After collecting the limits of the Erie policy liability coverage, claims were submitted to both insurers on behalf of Toni Lynn Sturkie for additional recoveries pursuant to underinsurance coverage provisions in the policies.[1] Upon a refusal of such claims, Ms. Sturkie's father instituted a declaratory judgment action on her behalf to determine her rights to receive underinsured motorists benefits from either or both defendant insurers. Because there was no factual disagreement to resolve, the matter was submitted to the trial court on briefs. It ruled that because she recovered the liability coverage policy limits from Erie, the tortfeasor's insurer, the plaintiff could not also recover underinsurance benefits from Erie. Further, the court declared that any underinsurance recovery by the plaintiff could only be sought from State Farm. Both the plaintiff and State Farm filed posttrial motions. After the trial court denied such motions, the plaintiff and

---

1. The liability coverage claim against Erie was apparently settled with the consent of State Farm, and without any waiver by the plaintiff of her right to raise subsequent underinsurance claims against either carrier.

State Farm each instituted the instant separate appeals to our court, which have been consolidated for purposes of consideration and decision.[2]

■   As noted at the outset of this opinion, our court has been called upon in the past to decide whether an injured plaintiff could recover both liability and underinsurance benefits under a single policy of motor vehicle insurance. See, for example, *Caldararo v. Keystone Insurance Company*, 393 Pa.Super. 103, 573 A.2d 1108 (1990); *Newkirk v. United Services Automobile Association*, 388 Pa.Super. 54, 564 A.2d 1263 (1989); and *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988). In all of these cases, it has been held that the injured passenger (or her estate) was precluded from recovering under the liability and underinsurance coverages of the same motor vehicle insurance policy.

In each such case, and in others discussed by the parties, the policy of the insurance carrier which paid liability limits contained language which expressly precluded the claimant from recovering both liability benefits and underinsurance benefits under the policy. However, the Erie policy in issue in the instant case contained no language which declared that one could not recover underinsurance benefits after having received payment of the total liability coverage available under the policy. Although they raise other contentions, which will be considered later in this opinion, the primary argument of both the plaintiff and of State Farm, on their respective appeals, is that Erie must provide underinsured motorists benefits to the injured plaintiff, in addition to the liability coverage benefits, because its policy does not explicitly preclude a recovery by the plaintiff against both coverages. The resolution of that issue requires an analysis of the applicable law as well as a review of the prior case decisions bearing on that question.

**2.**   The Pennsylvania Trial Lawyers Association, with leave of our court, has filed an Amicus Curiae Brief in support of the appellants in both cases.

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), Act of February 12, 1984, P.L. 26, No. 11, § 3, 75 Pa.C.S. § 1701, *et seq.*, effective October 1, 1984, contained the first statutory requirement that every motor vehicle insurance policy issued in the Commonwealth of Pennsylvania must provide underinsured motorists coverage. *Wolgemuth v. Harleysville Mutual Insurance Co., supra.* Section 1731 of the MVFRL (75 Pa.C.S. § 1731) states, in pertinent part:

§ 1731. Scope and amount of coverage

(a) General rule—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage)....

\*      \*      \*      \*      \*

(c) Underinsured motorist coverage. Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles....

An underinsured motor vehicle is defined in the MVFRL, in Section 1702 (75 Pa.C.S. § 1702), as a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages."

The leading case which discusses the history and rationale for the underinsurance provisions of the MVFRL is *Wolgemuth v. Harleysville Mutual Insurance Co., supra.* In that case, the administrator of the estate of a guest passenger killed in a motor vehicle accident brought a declaratory judgment action to determine whether the insurer which provided a policy of liability and underinsured motorists coverage on the host vehicle was responsible for

the payment of underinsurance benefits after the limits of liability coverage under the policy had already been received by the passenger or her estate. In an analysis of the issue presented, our court, *en banc*, stated:

> The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence. Thus, an insured who purchases $100,000.00 of liability coverage to protect others from his negligence, must by law, be offered the option of purchasing up to $100,000.00 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries.
>
> The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries. (emphasis in original) 370 Pa.Super. at 58, 535 A.2d at 1149.

In *Wolgemuth*, the insurer based its refusal to pay underinsurance benefits on a policy provision which excluded from the definition of underinsured vehicles any owned by, furnished, or available for regular use of the insured or any

family member. Our court concluded that such a provision did not violate either the MVFRL or public policy. Although the Erie policy in the instant case did not contain any similar clause precluding the combination of liability and underinsurance coverages sought herein on behalf of Ms. Sturkie, we cannot ignore the *Wolgemuth* analysis and conclusions that underinsurance coverage contemplates the existence of at least two applicable policies of insurance, with a lack of sufficient liability coverage to fully compensate the victim in the first policy, and a consequential claim against the second policy as the source for underinsured motorist coverage benefits.

Both the plaintiff and State Farm have contended that our court's decision in *Wolgemuth* was very limited as it was allegedly based solely upon a construction of specific policy exclusionary language. In that regard, the appellants rely upon the following declaration in our opinion in *Wolgemuth:* "We are not here asked to determine, and express no opinion upon, whether an insured, as that term is defined by the Motor Vehicle Financial Responsibility Law, could, under certain circumstances, recover under both the liability and underinsured motorist provisions of a single policy." 370 Pa.Super. at 59, 535 A.2d at 1149. We find no merit in that contention by the appellants. Section 1702 of the MVFRL (75 Pa.C.S. § 1702), defines "insured" as "[a]ny of the following":

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of the named insured or relative of the named insured.

The plaintiff in this case was a guest passenger, unrelated to and not a member of the household of the named insured. Thus, she was not an "insured" as defined by the MVFRL. Accordingly, the statement of limitation expressed by the court in its *Wolgemuth* decision did not render its analysis of the legislative scheme for underinsurance irrelevant to

its disposition of the case. We have no basis for finding such reasoning to be inapplicable in our consideration of the plaintiff's claims in the instant case.[3]

The concept that underinsurance coverage was intended to be claimed against a second policy coverage was further reiterated in the case of *Newkirk v. United Services Automobile Association, supra.* There, a panel of our court addressed a situation in which the injured passenger was the wife of the owner and operator of the vehicle in which she suffered the injuries for which underinsurance coverage was sought. That case also involved a declaratory judgment action, in which the plaintiff claimed a right to recover under both the liability and underinsured benefits provisions of a single motor vehicle insurance policy which had been issued to her husband. The policy in question included a provision that any vehicle owned by or furnished or available for the regular use of a family member could not be considered an uninsured motor vehicle.

In *Newkirk,* it was held that such a policy provision precluded the recovery under both policy coverages sought by the plaintiff. *Inter alia,* in discussing the issues presented in the case, the panel in *Newkirk* offered the following instructive analysis concerning the legislative in-

---

**3.** After setting forth this reservation regarding the scope of its decision in *Wolgemuth,* our court made reference to the fact that the deceased passenger in the case was a "class two" beneficiary, who had no contractual relationship with the insurer, and had paid no premiums. It was explained that to permit the recovery of underinsured motorist benefits from the insurer in that situation would be to convert essentially first party underinsured motorist coverage into third party liability coverage. The three classes or levels of beneficiaries were described by our Supreme Court in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). As will be discussed later in this opinion, in *Newkirk v. United Services Automobile Association, supra.,* a case involving a "class one" beneficiary who had a contractual relationship with the insurer, our court again stated its conclusion that the legislative scheme of the MVFRL contemplated underinsurance claims to be asserted against a "second" policy after the claimant had received a full recovery of inadequate compensation from the liability coverage of a separate or "first" policy. Therefore, it is evident that the class of beneficiaries into which the victim falls is of no consequence in this case.

tent underlying underinsurance motor vehicle coverage in our Commonwealth:

When the legislature created the underinsured motorist coverage provisions of the MVFRL, they simply did not intend for an individual to recover third party liability benefits and first party underinsured motorist benefits from the same automobile insurance policy. *See Wolgemuth,* 370 Pa.Super. at 56–61, 535 A.2d at 1148–50 (1988).

As we explained in *Wolgemuth,* our legislature enacted underinsured motorist coverage to resolve the inequities which resulted when only uninsured motorist coverage was mandatory and a claimant who had purchased uninsured motorist coverage was involved in a car accident with an underinsured motorist rather than an uninsured motorist. Our legislature thus intended underinsured motorist coverage to operate in the same manner as uninsured motorist coverage only for motorists who were injured by underinsured motorists.

With uninsured motorist coverage, a claimant cannot recover third party liability benefits and uninsured motorist coverage from a tortfeasor's policy of insurance. The reason for this is clear. If the tortfeasor has third party liability coverage from which the claimant can recover, then the tortfeasor is not uninsured and the claimant is not eligible to recover any uninsured motorist benefits. See 75 Pa.C.S. § 1701 (uninsured motor vehicle is a motor vehicle for which there is no liability insurance). When the claimant is entitled to recover uninsured motorist benefits because the tortfeasor is uninsured, the claimant recovers those benefits through his or her *own* policy of insurance.

Applying this manner of operation to underinsured motorist coverage, it follows logically that a claimant cannot recover third party liability benefits and underinsured motorist coverage from the same policy of insurance. Rather, the recovery of underinsured motorist coverage is dependent on the existence of two policies of insurance: the tortfeasor's policy and the claimant's poli-

cy. When a tortfeasor is underinsured, the claimant recovers third party liability benefits from the tortfeasor's insurance and supplements this recovery with the underinsured motorist benefits available through his or her *own* policy of insurance. (emphasis in original) 388 Pa.Super. at 63–64, 564 A.2d at 1267–68.

Thus, in both the *Wolgemuth* decision in 1988 and the *Newkirk* decision in 1989, our court expressed very clearly its view that the legislative intent underlying the underinsurance provisions of the MVFRL contemplated underinsurance claims against a second policy, after total liability payments under an initial policy were insufficient to compensate the underinsurance claimant. The same rationale regarding underinsured coverage claims was expressed by another panel of our court in 1990, in our decision in *Caldararo v. Keystone Insurance Co., supra.* There the record showed that the plaintiff was injured in a motor vehicle accident in which he was a passenger in a vehicle operated by his wife. He owned the vehicle and he and his wife were covered by a motor vehicle insurance policy issued by the defendant insurer. After receiving the full liability coverage limits in the policy, the plaintiff instituted a claim with the insurer for additional payment under the underinsured motorist coverage provisions of the policy. As in *Wolgemuth* and *Newkirk*, the policy contained a clause which excluded the type of recovery sought by the plaintiff. In rejecting the plaintiff's claims in *Caldararo*, our court again made reference to the declarations in *Wolgemuth* that the MVFRL suggested that underinsurance motorist coverage requires the existence of at least two applicable policies of motor vehicle insurance.

Our court expressed the same determination with respect to the legislative intent in this area again in 1991, in our panel decision in *Marroquin v. Mutual Benefit Insurance Company*, 404 Pa.Super. 444, 591 A.2d 290 (1991). That case involved a situation in which the plaintiff was struck by a vehicle owned and operated by his brother, who carried an insurance policy in his name on that vehicle. At the

time, both brothers resided with their parents, who had separate policy coverages with the same carrier on two vehicles. The parents' coverages provided liability coverage for family members. The insurer denied a claim by the plaintiff for underinsured benefits under the parents' policies after he recovered under the liability coverage of his brother's policy. In our court's analysis of the issues presented, reference was made to the *Wolgemuth* and *Newkirk* cases, and the principal was reaffirmed that more than one policy of insurance was necessary for a recovery of underinsured motorist benefits.

Our prior analyses of the legislative intent and scheme underlying underinsured motorist coverage in our Commonwealth does not permit us to adopt the position advanced by the appellants that the plaintiff can recover under both the liability and underinsurance coverage provisions of the Erie policy because there is no clause in the policy which specifically precludes such a double recovery. Because the law envisions underinsurance claims being raised against a second policy of insurance, after insufficient liability coverage has been exhausted under a primary policy, there was no need for Erie to insert a provision in its policy precluding the type of double recovery from a single policy sought herein by the plaintiff. We have no basis to hold that the absence of such clause automatically permits a claimant who has received the payment of liability policy limits, in the circumstances of this case, to thereafter pursue and receive benefits under the underinsurance provisions of the same policy. We therefore reject the primary contentions of both appellants.

State Farm suggests that because the Erie policy had no clause specifically prohibiting the dual recoveries sought by the plaintiff, it can be construed that Erie intended to permit one to state claims under both the liability and underinsurance provisions of the same policy. Further, State Farm points out Erie policy language which could arguably be construed to identify the plaintiff as an insured. We recognize the rule that the MVFRL is to be

construed liberally to afford the greatest possible coverage to injured claimants. See *Wolgemuth,* 370 Pa.Super. at 61–63, 535 A.2d at 1151. Further, we are mindful that we are to construe an insurance policy most strongly against the insurer which drafted it. *Erie Insurance Exchange v. Transamerica Insurance Co.,* 516 Pa. 574, 533 A.2d 1363 (1987); *Lovering v. Erie Indemnity Co.,* 412 Pa. 551, 195 A.2d 365 (1963). However, we are not free to arbitrarily rewrite an insurance policy. We would be doing so if we were to rule that the Erie policy in issue evidenced an intent by Erie to permit the dual claims asserted herein by the plaintiff, especially in light of the countervailing case precedents of our court, discussed earlier in this opinion.

Based upon all of the foregoing, it is evident that the plaintiff has no right to recover underinsured motorist benefits under the same Erie policy which afforded her payment of the policy limits under its liability provisions. Thus, the trial court ruled correctly in declaring that any underinsurance claims of the plaintiff should be directed toward State Farm, rather than Erie.

■ Two additional issues raised by the plaintiff may be quickly resolved. In her brief, the plaintiff argues that State Farm has a duty to arbitrate claims the plaintiff has asserted against it for underinsurance coverage. Further, the plaintiff contends she is entitled to consequential damages from State Farm as a result of its refusal to honor its obligation to arbitrate her underinsured motorist claims. As noted by the trial court, neither of these claims were raised in the plaintiff's complaint, which only sought a declaratory judgment as to the respective liabilities of Erie and State Farm to pay underinsured motorist benefits. Because neither a request to compel arbitration nor any claim for damages was raised in the plaintiff's pleadings, the trial court correctly rejected both claims.

The order of the trial court is affirmed as to both appeals.

POPOVICH, J., concurs in the result.